[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 26, 2010
JOHN LEY
CLERK

_____

No. 09-15107
Non-Argument Calendar

_____

Agency No. A096-098-283


GEORGE ATTA FAKHRY SHALABY,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 26, 2010)


Before EDMONDSON, BLACK and MARTIN, Circuit Judges.

PER CURIAM:

George Atta Fakry Shalaby, a native and citizen of Egypt, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision by the Immigration Judge ("IJ").[1] The IJ's decision denied asylum and withholding of removal.[2] No reversible error has been shown; we dismiss the petition in part and deny it in part.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo legal determinations of the BIA. Id. A factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287

---

[1]The IJ's decision followed the grant of Shalaby's motion to reopen based on changed country conditions and a second hearing before the IJ

[2]Shalaby abandons review of the portion of the decision denying relief under the Convention Against Torture because he offers no argument on this claim. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons an issue by failing to offer argument on that issue).

(11th Cir. 2003).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including religion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

Shalaby claimed that he was persecuted by Muslims because he was a Coptic Christian. At his first asylum hearing, Shalaby testified about two incidents where Muslims attacked him while he was distributing food to needy Christians.

In the first incident, police detained him overnight for creating a disturbance between Christians and Muslims; the police later released Shalaby and instructed him to stay away from the area where he was working. In the second incident, Shalaby was distributing aid in a different area, but the Muslims objected to his work because they wanted to convert the needy Christians to Islam. Police again detained Shalaby for violating their earlier instructions to him and told him that he would have to appear in Emergency Court for inciting sectarian trouble. The police released Shalaby two days later without filing any charges but told him that the Attorney General would file charges at a later time and that he should not leave

3

the area without permission. Shalaby then left Egypt for the United States. On these facts, the IJ and BIA concluded that the events Shalaby testified about did not rise to the level of past persecution and that Shalaby failed to establish a well-founded fear of future persecution.

At the second hearing, Shalaby testified that conditions for Coptic Christians in Egypt had worsened since he had last been there and that conditions had worsened for his family in particular. His family owned and operated a pork business in Cairo and continued to have problems with Muslims in relation to the business. Muslims had beaten factory workers and had also beaten Shalaby's father and brother. The police continued to ask Shalaby's father about Shalaby whenever his father tried to file a police report about these incidents.

The IJ again denied relief, first concluding that Shalaby had presented no new evidence to disturb the earlier conclusion that he suffered no past persecution. And the IJ again concluded that, even with the new evidence and testimony, Shalaby had not demonstrated a well-founded fear of future persecution because he did not prove a connection between the attacks on his family's business and his own work with the church. The IJ also concluded that, although there was some evidence of increased violence against Coptic Christians, the police did protect them.

The BIA agreed with the IJ, noting that Shalaby's fear of future persecution was unreasonable given that he was not targeted because of his family's business when he was in Egypt and the acts against his family were not sufficiently related to his claim that he was singled out based on his work with the church.

On appeal, Shalaby argues that the incidents against him and his family constitute past persecution. We agree with the government that we lack jurisdiction over this claim because Shalaby did not raise it in his appeal to the BIA. See Amaya-Artunduaga v. U.S. Attorney Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (explaining that we lack jurisdiction to consider claims raised in a petition for review that were not exhausted before the BIA). That the BIA noted in its decision that Shalaby had experienced incidents of religious discrimination that did not rise to the level of past persecution does not alter our conclusion. See id. at 1250-51 (noting that we lack jurisdiction over claims not raised before the BIA even if the BIA sua sponte addressed them). We dismiss the petition for review on the claim of past persecution.

Shalaby also argues that his fear of future persecution was objectively reasonable. To show a well-founded fear of future persecution, Shalaby had to establish that his fear both was "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "[T]he objective prong can be fulfilled . . . by

5

establishing . . . that he . . . has a good reason to fear future persecution." Id. (internal quotation omitted).  Shalaby has shown no such good reason.

Even assuming that Muslim extremists have increasingly targeted his family's business based on a religious disagreement with its Christian clientele and their consumption of pork products, Shalaby has failed to show how these incidents related to him personally.  The record indicates that Shalaby was not involved in his family's business:  he testified that he was pursuing a career in accounting and he submitted partnership documents about the family business that did not contain his name.  And based on the events personal to Shalaby, that he was targeted for his charity work with the church and not any connection to his family's business is clear.

Shalaby also showed no objective fear based on the events that previously happened to him.  Although Shalaby twice had been detained by the police and threatened with charges, nothing evidenced that charges ever were filed against Shalaby and he has been absent from Egypt for almost a decade.  See Sepulveda, 401 F.3d at 1232 (concluding that threats of future violence based on prior political activity were not enough to establish an objectively reasonable fear of future persecution, where the evidence did not indicate that the petitioner's notoriety would outlast his or her presence).  Shalaby also testified that proselytizing was

6

illegal in Egypt. But in both instances where police detained him, he was only aiding other Christians and not trying to convert Muslims.

About current country conditions in Egypt, the evidence Shalaby provided indicated that -- although some violence against Coptic Christians existed -- the police did work to protect them, much of the sectarian violence was instigated by private citizens or groups, and Christians generally practiced without harassment. Therefore, we cannot say that the current situation of Coptic Christians in Egypt compels the conclusion that Shalaby will be singled out for future persecution upon his return.

Substantial evidence supports the BIA's decision that Shalaby was unentitled to asylum; and we are not compelled to reverse the BIA's decision. Shalaby's failure to establish eligibility for asylum forecloses his eligibility for withholding of removal. Forgue, 401 F.3d at 1288 n.4.

PETITION DISMISSED IN PART, DENIED IN PART.